UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PUONGPUN SANANIKONE,                    No. 2:07-cv-01434-MCE-EFB

      Plaintiff,

  v.                                    <u>MEMORANDUM AND ORDER</u>

UNITED STATES OF AMERICA,

      Defendant.

AND RELATED COUNTERCLAIMS

----oo0oo----

    Plaintiff Puongpun Sananikone ("Sananikone"), a former official of American Steel Frame, Inc. ("ASFI") has sued the government for (1) a refund of taxes that were assessed against and collected from him; and (2) the abatement of the Trust Fund Recovery Penalty under 26 U.S.C. § 6672 ("TFRP") that was imposed upon him.  (ECF No. 1.)

/// 

/// 

/// 

1

1   In its Answer (ECF No. 9), Defendant/Counterclaimant United

2   States ("United States" or "government") counterclaimed against

3   Counterclaim Defendant Jacob Intveld ("Intveld"), another ASFI

4   executive, to reduce to judgment an outstanding tax assessment

5   made against him pursuant to the TFRP for ASFI's withholding

6   income and social security taxes ("trust fund taxes").  Intveld

7   answered the United States' Counterclaim and counterclaimed for a

8   refund of an overpayment of employment taxes and the abatement of

9   the TFRP for the taxable periods ending June 30, 2000, September

10  30, 2000, December 31, 2000, and June 30, 2001.  (ECF No. 21.)

11      Presently before the Court is a Motion for Summary Judgment

12  brought by the United States against Intveld pursuant to Federal

13  Rule of Civil Procedure Rule 56.[1]  (ECF No. 85.)  For the reasons

14  set forth below, the United States' Motion will be denied.[2]

15

16                        **BACKGROUND**[3]

17

18      ASFI was a commercial and residential light-gauge steel-

19  truss manufacturing and installation company based in Stockton,

20  California.

21  ///

22

23  ────────────────────

24      [1] Unless otherwise noted, all future references to Rule or
    Rules are to the Federal Rules of Civil Procedure.

25      [2] Because oral argument will not be of material assistance,
26  the Court orders this matter submitted on the briefs.  E.D. Cal.
    Local Rule 230(g).

27      [3] The factual assertions in this section are found in the
    non-moving party's Mem. P. & A. Opp'n Mot. Summ. J. (ECF No. 87)
28  unless otherwise specified.

In February, 2000, ASFI hired Intveld as its Vice President of Manufacturing and Operations ("Operations VP"). Intveld's duties and responsibilities were solely in the production area, relating to the operations of the manufacturing processes. He did not hire or fire any employees. He reported to Paul Ta ("Ta"), Executive Vice President and Chief Executive Officer of ASFI.

On February 17, 2000, the ASFI Board of Directors ("Board") authorized Intveld as a signatory on ASFI's checking account. Intveld did not learn of this authorization, nor act upon it, until June, 2000, when Ta asked him to sign some checks. Also during February of 2000, the Board gave Intveld specific authority to negotiate a sale of ASFI's stock to Dietrich Industries. No sale, however, transpired from those negotiations. Intveld's specific authority in that regard terminated after sixty days.

On May 31, 2000, Inveld became President of ASFI, with the understanding that he would be President in name only and his duties at ASFI would not change.[4] Following his appointment as President, Intveld reported to both Ta and [Board Chairman] Sananikone. Because ASFI's anti-fraud policy required two signatures on all business checks written, Intveld, as an authorized signatory, often signed checks presented to him.

///

///

---

[4] After several attempts by Sananikone to persuade Intveld to accept the position of President, Intveld agreed on the condition that he would be named President "only for marketing and client relationship reasons," so ASFI could capitalize on Intveld's prior industry-wide relationships.

However, in all instances Intveld claims he neither prepared the checks nor exercised any authority over which checks were later released for payment.  Intveld did not have any knowledge of what happened to the checks after he signed them.  In November, 2000, Intveld was appointed as a member of ASFI's Board.  He attended four board meetings while employed by ASFI and gave a "President's Report" at each of them.

In January, 2001, ASFI's bookkeeper, Charlene Amarante ("Amarante") informed Intveld for the first time that payroll tax returns had not been filed for the second, third, and fourth quarters of 2000 and asked him to sign them.  Intveld told Amarante that "preparing and signing payroll tax returns were outside his authority" and immediately contacted Sananikone to apprise him of the delinquent returns.  Mem. P. & A. Opp'n Mot. Summ. J. 7.  Sananikone told Intveld that he would "speak to Ta and take care of it."  Id.

According to Intveld, Ta occasionally showed him a list of suppliers and asked that he identify those suppliers that had to be paid in order to avoid halting production.  Intveld indicated which suppliers met that criteria and gave the list back to Ta. Intveld never made any decisions about which creditors to pay. The list did not include any creditors other than production suppliers.  In February, 2001, Intveld used his personal credit card to cover payroll when Amarante informed him that Ta failed to deposit funds needed to cover payroll checks.

///

///

///

4

During the second quarter of 2001, Ta and Amarante attempted to negotiate a settlement of past due trust fund taxes by meeting with J.K. Harris.  They were told that ASFI had to pay the trust fund taxes for the next two quarters as they became due and J.K. Harris would attempt to negotiate a settlement with the Internal Revenue Service ("IRS") for the remaining delinquent periods. Intveld never met with anyone regarding the delinquent trust fund taxes or negotiated with anyone to settle the debt.  When Ta refused to pay the taxes for the first quarter of 2001, Amarante informed Intveld.  Dr. Nguyen Vo ("Vo"), a shareholder and director of ASFI, met with Intveld and Ta and instructed Ta to sign the tax return and accompanying check for payment.  Intveld witnessed Ta's signature on both.

On July 10, 2001, prior to a Board meeting, Intveld attempted to resign from ASFI because he anticipated that Ta would again refuse to pay the delinquent second quarter's trust fund taxes.  During the meeting, Ta indeed refused to pay them. "Sananikone and Vo assured Intveld that they would take care of [T]a and the payroll tax issue."  Mem. P. & A. Opp'n Mot. Summ. J. 8.  Intveld resigned in August, 2001, citing the company's ongoing delinquent taxes as the reason.  Intveld was asked to continue working at ASFI until a new president was transitioned. He agreed to do so.  Intveld left ASFI in September of 2001.

///

///

///

///

///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim...may...move...for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962). Once the moving party meets the requirements of Rule 56 by showing that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

///

6

Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Id. at 250.   In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.   See T.W. Elec. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-631 (9th Cir. 1987), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**ANALYSIS**

On February 25, 2004, the United States, through its agent, the Secretary of the Treasury, made an assessment against Intveld pursuant to the TFRP for the tax periods ended June 30, 2000, September 30, 2000, December 31, 2000, and June 30, 2001.   The assessment was made due to Intveld's "willful failure to collect, truthfully account for, and pay over the withheld Trust Fund taxes of [ASFI]."   On April 14, 2004, Intveld filed a Formal Written Appeal and Protest.   He filed an IRS Form 843 Claim for Refund and Request for Abatement for the abovementioned periods on January 10, 2008.   The government alleges that Intveld is liable for the tax assessment because as President of ASFI from May 2000 until at least August 2001, he bore the responsibility to ensure the corporation paid its required trust fund taxes. Intveld asserts twelve affirmative defenses in his Answer.   (ECF No. 21.)   Intveld acknowledges that he was an officer of ASFI during the abovementioned periods, but denies being responsible for the corporation's unpaid trust fund taxes.

In his Answer, Intveld counterclaims against the United States for (1) the refund of taxes collected from him and (2) the abatement of the TFRP imposed upon him under 26 U.S.C. § 6672.

### A.   Responsible Person Under 26 U.S.C. § 6672

Employers are required to withhold federal income and social security taxes from employees' wages for each pay period and remit those withheld taxes to the IRS. See 26 U.S.C. §§ 3102(a), 3402(a); see also Davis v. United States, 961 F.2d 867, 869 (9th Cir. 1992). Employers hold the withheld amounts in trust for the government between the time the taxes are withheld from the employees and the time the employer remits them to the IRS. 26 U.S.C. § 7501. Employers may not use withheld funds to pay other business expenses. See 26 U.S.C. §§ 3102(b), 3403, 7501(a). Regardless of whether or not the employer actually remits the withheld taxes to the IRS, employees are credited with the amounts for income tax and social security purposes. See Slodov v. United States, 436 U.S. 238, 243 (1978); Davis, 961 F.2d at 869. To prevent the government's loss of withheld amounts not paid by the employer but credited to the employee, 26 U.S.C. § 6672 provides that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof, shall, in addition to other penalties provided by law, be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

///

26 U.S.C. § 6672(a).  It is well-settled law that a person liable under this section need not be a person who performs all three functions (collecting, accounting for, and paying over), but rather need only be a person responsible for the collection of third-party taxes.  <u>Slodov</u>, 436 U.S. at 250.

There is a two-step inquiry when determining liability under Section 6672.  First, a court must determine whether the assessed person meets the "responsible person" test.  If that test is met, a court must then determine whether the responsible person "willfully fail[ed] to collect,...account for, and pay over the tax[es]." § 6672(a).  The government bears the initial burden of proof when it brings suit to collect taxes.  <u>Palmer v. United States</u>, 116 F.3d 1309, 1312 (9th Cir. 1997).  However, there is a presumption of correctness applied to tax assessments, so long as such assessments are supported by a "minimal fact foundation." <u>Id.</u>  Here, the United States has established its prima facie case through its production of IRS Form 4340, Certificates of Assessments and Payments.  <u>See</u> <u>Koff v. United States</u>, 3 F.3d 1297, 1298 (9th Cir. 1993); <u>Hughes v. United States</u>, 953 F.2d 531, 535 (9th Cir. 1992).  The burden of persuasion accordingly shifts to Intveld to prove that either (1) he is not a responsible person under the statute; or (2) he did not willfully fail to collect, account for, or pay over the trust fund taxes.

///

///

///

///

///

To prove Intveld was a responsible person under the statute, the government relies on _Purcell v. United States_, 1 F.3d 932 (9th Cir. 1993).  There, the United States Court of Appeals for the Ninth Circuit held that if a person "had the authority required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact," then that person was "responsible" under the statute.  _Id._ at 937.  The government also cites a long line of cases establishing the factors courts use when determining whether a particular person had "significant control," including:

1.   The ability to sign checks on behalf of the corporation or to prevent a check's issuance;
2.   The authority to control distributions of payroll;
3.   The authority to control payroll accounts;
4.   The authority and control to pay the payroll taxes;
5.   The authority to sign and prepare corporate tax returns;
6.   The authority to hire and fire employees;
7.   The authority to control the financial affairs of the corporation;
8.   An individual's status as an officer, shareholder, or director of the corporation; and
9.   An individual's entrepreneurial stake in the corporation.

_See_ Mem. of P. & A. Supp. Mot. Summ. J. 21 (internal citations omitted).

The government offers numerous facts to prove Intveld exercised significant control over ASFI for the tax periods in question.  However, in assessing the propriety of summary judgment, the court must credit all inferences supported by [the non-moving party's] evidence.  _Blackhorn v. City of Orange_, 485 F.3d 463, 470 (9th Cir. 2007), (quoting _Anderson v. Liberty Lobby, Inc._, 477 U.S. at 255).

///

10

There is no dispute that from May 31, 2000 until August 2001, Intveld held the title of President of ASFI.  It is also undisputed that the Board gave Intveld check-signing authority on February 17, 2000.  While the Board's action and the date are not in dispute, Intveld argues that this does not prove significant control because he did not even learn of his authority to sign checks until June 2000.  More importantly, all checks Intveld signed were returned to Ta, who decided which ones to release for payment.  Intveld argues that while he physically signed the checks to fulfill ASFI's anti-fraud policy requiring two signatures on every check, he did not have the authority to determine which checks would actually be released for payment.

Although the government claims that Intveld had the authority to hire and fire employees and supervised approximately twenty-five manufacturing employees, Intveld denies hiring or firing anyone at ASFI.  The government nonetheless argues that Intveld possessed the authority to control the financial affairs of ASFI because he held the title of President and performed duties relating to that title, such as giving "President's Reports" to the Board during quarterly meetings.  The government cites a document titled "Job Duties of President of ASFI," in which the following duties are listed: "[e]valuate techniques and strategies to minimize the company's tax liabilities,...[r]eview monthly financial statements for all department activities,...and [c]oordinate and review an overall compensation plan."  Intveld challenges the document's authenticity and claims it lacks evidentiary foundation and therefore should not be considered by the Court.

11

He claims he held the title of President only for marketing, client relationship and industry name recognition purposes, and contends his role as President conferred no greater authority beyond what he possessed previously as Operations VP of ASFI.

The United States, on the other hand, maintains that Intveld regularly met with Schuler Homes, ASFI's largest customer, proving he exercised significant authority over ASFI.  Intveld explains that before being appointed President he was asked to meet with Schuler Homes because he had a positive relationship with Schuler from past business dealings with them.  The government also points to Intveld's involvement with ASFI's financing when Intveld signed a promissory note with a creditor for $15,000 and later wrote that same creditor asking for an extension of the note's terms.  Intveld claims, in response, that he was not involved in ASFI's financing in any way.  The only document he signed regarding financing was an extension of an instrument previously negotiated by others at ASFI.  Ta told him to sign the documents, and he did as he was told.  Additionally, and as a fundamental matter, the United States claims that the office of President of ASFI had inherent financial control, as stated in the document titled "Job Duties of President of ASFI." See supra.  Intveld claims his duties at ASFI did not change when he went from being Operations VP to President.

As further evidence of Intveld's inherent financial control, the government contends that Amarante regularly prepared a list of ASFI's suppliers for Intveld, who would select which creditors would be paid.  For a period of time, Intveld and Amarante would sign checks "For Disbursement Approval."

Intveld disputes this and says he was asked by Ta to indicate the suppliers on a list whose product was necessary to avoid a halt in the plant's production.  The list was returned to Ta, as were the signed checks.  Only Amarante wrote "For Disbursement Approval" on the checks, and she did so at Ta's direction.

Finally, the United States argues that while Intveld may not have obtained possession of stock in ASFI, he was promised stock as part of an anticipated sale of ASFI to another company.  In response, Intveld simply points to the undisputed fact that he was never an investor in ASFI and never owned stock in the corporation.

Taking the evidence in the light most favorable to Intveld, the trier of fact may conclude that he was not a "responsible person" who exercised "significant control" over the corporation under Section 6672.  As the starkly contrasting arguments outlined above illuminate, any number of disputed facts on the issue of Intveld's true authority prevent the government's motion from being granted.


**B.   Willful Failure to Truthfully Collect, Account for, or Pay Over Trust Fund Taxes Under 26 U.S.C. § 6672**

The Ninth Circuit has "construed the term 'willfulness' for purposes of failing to pay over withholding taxes as a 'voluntary, conscious and intentional act to prefer other creditors over the United States.'" Phillips v. United States, 73 F.3d 939, 942 (9th Cir. 1996) (quoting Klotz v. United States, 602 F.2d 920, 923 (9th Cir. 1979); Davis v. United States, 961 F.2d 867, 871 (9th Cir. 1992)).

13

It distinguishes "reckless disregard" from actual knowledge of whether the trust fund taxes are being paid, saying reckless disregard may sufficiently establish willfulness. <u>Id.</u> (citing <u>Sorenson v. United States</u>, 521 F.2d 325, 329 (9th Cir. 1975); <u>Teel v. United States</u>, 529 F.2d 903, 905 (9th Cir. 1976). Recklessness will be found if a responsible person "fails to investigate or correct mismanagement after being notified of a default in the payment of withholding tax." <u>Phillips</u>, 73 F.3d at 943.  However, the government must prove more than mere negligence.  <u>Klotz v. United States</u>, 602 F.2d at 924.

The government contends that "Intveld knew that ASFI owed federal payroll taxes at least as early as January 2001." Mem. P. & A. Supp. Mot. Summ. J. 25.  In order to allege liability for taxes owed before that date, it relies on <u>Davis</u>, 961 F.2d at 876, which held that a responsible person's willful actions can make him responsible for taxes that accrued earlier than when he became aware of the delinquency.  In <u>Davis</u>, the court held that use of after-acquired funds to pay a corporate taxpayer's commercial debts by the same persons who were responsible for the corporation's failure to collect and pay withholding taxes in the first instance, as opposed to new management, gives rise to liability for the "responsible person" penalty of Section 6672. Here, Intveld neither decided the application of after-acquired receipts towards existing commercial debts, nor directed which creditors were to be paid.  Therefore, <u>Davis</u> is not analogous.

///

///

///

14

1    The United States also argues that Intveld's failure to
2    investigate and correct ASFI's failure to pay its payroll taxes
3    and failure to use funds received by ASFI during 2001 to pay the
4    delinquent trust fund taxes constitutes reckless disregard.  That
5    reckless disregard, in turn, establishes willfulness under the
6    statute with respect to all of the tax periods in dispute.  <u>See</u>
7    <u>Phillips</u>, 73 F.3d at 942; <u>see</u> <u>also</u> <u>Greenberg v. United States</u>,
8    46 F.3d 239, 244.  This case, however, is clearly distinguishable
9    on the facts from both <u>Phillips</u> and <u>Greenberg</u>.  In both those
10   cases, the person in question had unrestricted access to
11   corporate funds with which to pay the delinquent taxes.  Both
12   persons were either aware or should have been aware of the trust
13   fund tax delinquency, based upon their respective roles and
14   direct authority in their respective organizations.  Intveld, on
15   the other hand, is not in the same situation.  He neither
16   controlled the bank account funds (either incoming or outgoing),
17   nor directed who should be paid and when.  Since the Court must
18   credit all inferences supported by the non-moving party's
19   evidence when deciding a motion for summary judgment, <u>see</u> <u>supra</u>,
20   it finds that the government has not established the requisite
21   reckless disregard in failing Intveld's alleged failure to pay
22   the delinquent trust fund taxes.
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

1   Since the Court finds a genuine dispute both as to whether

2   Intveld is a "responsible person" and whether he "willfully

3   failed" to pay ASFI's trust fund taxes, summary judgment will not

4   be granted.[5]

5

6                              **CONCLUSION**

7

8       Based on the foregoing, the Defendant/Counterclaimant United

9   States is not entitled to summary judgment as to its

10  counterclaim.  The United States' Motion for Summary Judgment is

11  accordingly DENIED.

12      IT IS SO ORDERED.

13
    Dated: November 30, 2010

14

15                                    _____

16                                    MORRISON C. ENGLAND, JR.
                                      UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26  ─────────────────

27      [5] Because the Court has determined the United States' motion
    fails given the "responsible person" and "willful failure" bases
    alone, it need not address Intveld's remaining arguments against
28  summary judgment and declines to do so.

                                  16