UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PUONGPUN SANANIKONE,                    No. 2:07-cv-01434-MCE-EFB

       Plaintiff,

   v.                                    <u>MEMORANDUM AND ORDER</u>

UNITED STATES OF AMERICA,

       Defendant.

AND RELATED COUNTERCLAIMS

----oo0oo----

    Plaintiff Puongpun Sananikone ("Sananikone"), a former official of American Steel Frame, Inc. ("ASFI"), has sued the government for (1) a refund of taxes that were assessed against and collected from him; and (2) the abatement of the Trust Fund Recovery Penalty under 26 U.S.C. § 6672 ("TFRP") that was imposed upon him.  (ECF No. 1.)

///
///
///

1

In its Answer, Defendant/Counterclaimant United States of America ("United States" or "government") counterclaimed against Counterclaim Defendant Michael Goodman ("Goodman"), another ASFI executive, to reduce to judgment an outstanding tax assessment made against him pursuant to the TFRP for ASFI's withholding income and social security taxes ("trust fund taxes"). Goodman answered the United States' Counterclaim and counterclaimed for a refund of overpaid income taxes for the calendar year 2006. (ECF No. 22.)

Presently before the Court is a Motion for Summary Judgment brought by the United States against Goodman pursuant to Federal Rule of Civil Procedure Rule 56.[1] (ECF No. 84.) For the reasons set forth below, the United States' Motion will be denied.[2]

**BACKGROUND[3]**

ASFI was a commercial and residential light-gauge steel-truss manufacturing and installation company based in Stockton, California. On or around May 14, 2001, Jacob Intveld ("Intveld"), then-President of ASFI, hired Michael Goodman to be the Director of the Commercial Steel Truss Division.

---

[1] Unless otherwise noted, all future references to Rule or Rules are to the Federal Rules of Civil Procedure.

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[3] The factual assertions in this section are found in the non-moving party's Mem. P. & A. Opp'n Mot. Summ. J. (ECF No. 88.) unless otherwise specified.

1   According to the United States, on October 4, 2001, during a

2   meeting of ASFI's Board of Directors ("Board"), Goodman was

3   appointed President, filling the vacancy Intveld created when he

4   resigned.  Def.'s Mem. P. & A. Supp. Mot. Summ. J. 7.

5       Goodman states that his appointment as interim president was

6   never made official or memorialized with an employment contract.

7   Instead he maintains simply that he was "thrust in the position

8   if only as the titular head and assumed certain functions as

9   interim president."  Mem. P. & A. Opp'n Mot. Summ. J. 4-5.

10  Goodman admits to signing "certain documents which need[ed] the

11  signature of an officer" but denies he was ever "involved in the

12  company's finances."  Id. at 5.  To support his position that his

13  duties did not include collecting and paying employment taxes,

14  Goodman relies on the deposition of ASFI's former bookkeeper,

15  Charlene Amarante.  Amarante Dep. 205:12-206:7, Aug. 25, 2009.

16  (ECF No. 88-3.)  On the other hand, as proof of Goodman's

17  financial authority at ASFI, the government cites a letter from

18  Goodman to Board Chairman Sananikone dated October 9, 2001, in

19  which Goodman expressed hope to work out ASFI's vendor problems,

20  "includ[ing] the IRS."  Def.'s Mem. P. & A. Supp. Mot. Summ. J.

21  9. (ECF No. 84-1.)  Goodman counters that he did not have the

22  authority to decide which creditors were to be paid or release

23  payment for the checks he signed because those decisions were

24  made exclusively by the Board.

25      On October 2, 2006, the United States, through its agent,

26  the Secretary of the Treasury, made an assessment of $75,632.53

27  against Goodman pursuant to the TFRP for the tax period ended

28  December 31, 2001.

3

The assessment was made due to Goodman's "willful failure to collect, truthfully account for, and pay over the withheld Trust Fund taxes of [ASFI]." Id. at 6. The government alleges that Goodman is liable for the tax assessment because as President of ASFI during the fourth quarter of 2001, he bore the responsibility to ensure the corporation paid its required trust fund taxes. While Goodman acknowledges that he signed documents as ASFI's President, he claims he was only a titular president and had no authority over financial matters of the corporation. Therefore, he denies being responsible for ASFI's delinquent taxes.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

///

///

///

///

///

1   Rule 56 also allows a court to grant summary adjudication on
2   part of a claim or defense.  See Fed. R. Civ. P. 56(a) ("A party
3   seeking to recover upon a claim...may...move...for a summary
4   judgment in the party's favor upon all or any part thereof.");
5   see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79
6   (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of
7   Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).
8   In considering a motion for summary judgment, the court must
9   examine all the evidence in the light most favorable to the non-
10  moving party.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).
11  Once the moving party meets the requirements of Rule 56
12  by showing that there is an absence of evidence to support the
13  non-moving party's case, the burden shifts to the party resisting
14  the motion, who "must set forth specific facts showing that there
15  is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc.,
16  477 U.S. 242, 256 (1986).  Genuine factual issues must exist that
17  "can be resolved only by a finder of fact, because they may
18  reasonably be resolved in favor of either party."  Id. at 250.
19  In judging evidence at the summary judgment stage, the court does
20  not make credibility determinations or weigh conflicting
21  evidence.  See T.W. Elec. v. Pac. Elec. Contractors Ass'n,
22  809 F.2d 626, 630-631 (9th Cir. 1987), citing Matsushita Elec.
23  Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
24  ///
25  ///
26  ///
27  ///
28  ///

**ANALYSIS**

**A.    Responsible Person Under 26 U.S.C. § 6672**

Employers are required to withhold federal income and social security taxes from employees' wages for each pay period and remit those withheld taxes to the Internal Revenue Service ("IRS").  See 26 U.S.C. §§ 3102(a), 3402(a); see also Davis v. United States, 961 F.2d 867, 869 (9th Cir. 1992).  Employers hold the withheld amounts in trust for the government between the time the taxes are withheld from the employees and the time the employer remits them to the IRS.  26 U.S.C. § 7501.  Employers may not use withheld funds to pay other business expenses.  See 26 U.S.C. §§ 3102(b), 3403, 7501(a).  Regardless of whether or not the employer actually remits the withheld taxes to the IRS, employees are credited with the amounts for income tax and social security purposes.  See Slodov v. United States, 436 U.S. 238, 243 (1978); Davis, 961 F.2d at 869.  To prevent the government's loss of withheld amounts not paid by the employer but credited to the employee, 26 U.S.C. § 6672 provides that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

///
///
///
///

26 U.S.C. § 6672(a).  It is well-settled law that a person liable under this section need not be a person who performs all three functions (collecting, accounting for, and paying over), but rather need only be a person responsible for the collection of third-party taxes.  <u>Slodov</u>, 436 U.S. at 250.

There is a two-step inquiry when determining liability under Section 6672.  First, a court must determine whether the assessed person meets the "responsible person" test.  If that test is met, a court must then determine whether the responsible person "willfully fail[ed] to collect,...account for, and pay over the tax[es]."  § 6672(a).  The government bears the initial burden of proof when it brings suit to collect taxes.  <u>Palmer v. United States</u>, 116 F.3d 1309, 1312 (9th Cir. 1997).  However, there is a presumption of correctness applied to tax assessments, so long as such assessments are supported by a "minimal fact foundation."  <u>Id.</u>  Here, the United States has established its prima facie case through its production of IRS Forms 4340, Certificates of Assessments and Payments.  <u>See</u> <u>Koff v. United States</u>, 3 F.3d 1297, 1298 (9th Cir. 1993); <u>Hughes v. United States</u>, 953 F.2d 531, 535 (9th Cir. 1992).  The burden of persuasion accordingly shifts to Goodman to prove that either (1) he is not a responsible person under the statute; or (2) he did not willfully fail to collect, account for, or pay over the trust fund taxes.

///

///

///

///

///

To prove Goodman was a responsible person under the statute, the government relies on Purcell v. United States, 1 F.3d 932 (9th Cir. 1993).  In that case, the United States Court of Appeals for the Ninth Circuit held that if a person "had the authority required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact," then that person was "responsible" under the statute.  Purcell, 1 F.3d at 937.  The government also cites a long line of cases establishing the factors courts use when determining whether a particular person had significant control, including:

1. The ability to sign checks on behalf of the corporation or to prevent a check's issuance;
2. The authority to control distributions of payroll;
3. The authority to control payroll accounts;
4. The authority and control to pay the payroll taxes;
5. The authority to sign and prepare corporate tax returns;
6. The authority to hire and fire employees;
7. The authority to control the financial affairs of the corporation;
8. An individual's status as an officer, shareholder, or director of the corporation; and
9. An individual's entrepreneurial stake in the corporation.

See Def.'s Mem. P. & A. Supp. Mot. Summ. J. 21 (internal citations omitted).

On October 5, 2001, ASFI's Board appointed Goodman President and Advisory Director of the company.  In a document titled "Job Duties of President of ASFI, his duties included the following: "[e]valuate techniques and strategies to minimize the company's tax liabilities,...[r]eview monthly financial statements for all department activities,...and [c]oordinate and review an overall compensation plan." Id. at 23.

8

1   The government claims that Goodman "was significantly involved in
2   the finances of the company...[with] check signing authority. "
3   Id. at 24.  Goodman signed payroll and reimbursement checks to
4   himself.  He signed a contract amending company obligations (with
5   Schuler Homes, Inc.) and also signed a Chapter 7 Bankruptcy
6   Petition on behalf of ASFI.  Goodman signed IRS Form 4180, Report
7   of Interview with Individual Relative to Trust Fund Recovery
8   Penalty or Personal Liability for Excise Tax on August 1, 2003,
9   which states that he was "[r]esponsible for all financial
10  obligations of [ASFI] During October 2001 thr[ough] December
11  2001."  Finally, at least three administrative employees tendered
12  their letters of resignation to Goodman during the fourth quarter
13  of 2001.

14      In assessing the propriety of summary judgment, however, the
15  court must credit all inferences supported by [the non-moving
16  party's] evidence.  Blackhorn v. City of Orange, 485 F.3d 463,
17  470 (9th Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc.,
18  477 U.S. at 255).  Goodman denies that he possessed any "power to
19  authorize the payment of any funds on behalf of ASFI," nor the
20  "authority to determine which creditors should be paid."  Mem. of
21  P. & A. Opp'n Mot. Summ. J. 9.  Goodman had not seen the document
22  titled "Job Duties of President of ASFI" until it was shown to
23  him during the discovery stage of this suit, therefore, he claims
24  he should not be held responsible for duties found within it.  He
25  did not learn of ASFI's substantial trust fund tax liability
26  until a revenue agent contacted him on August 1, 2003.
27  ///
28  ///

While he admits that he was named interim President by the ASFI's
Board, he denies being given any additional authority at that
time or ever.  Instead, his duties remained basically the same as
those he had before being appointed President, namely, directing
manufacturing operations.  Goodman signed documents needing an
officer's signature only when he was specifically directed to do
so by the ASFI's Board or Controller.  The Board asked Goodman to
meet with Schuler Homes because he had a good working
relationship with them, so he complied.

Goodman insists that he did not participate in the decision-
making process at ASFI.  Staff left resignation letters on his
desk because he was the only person left in the company, not
because of his level of authority.  Further, he was the only
person left in the company because he agreed to stay on to help
close the company and file for bankruptcy.

After the resignation of ASFI's Controller on November 30,
2001, Goodman found tax returns on the Controller's desk.  He
immediately called Long Truong ("Truong"), a Director of ASFI to
tell him about the tax returns.  Truong said he would take care
of them and came to the office within fifteen minutes of
Goodman's call, whereupon he took the returns with him and left.
The Board maintained complete authority over all financial
matters of ASFI, deciding who would be paid and when.  Even after
Goodman become an authorized check co-signer on December 13,
2001, all checks required Truong's approval before being released
for payment.  The only checks Goodman signed were for salaries or
reimbursements for Goodman and the bookkeeper while closing down
the business.

10

1 Finally, Goodman had no financial stake as either an investor or
2 stockholder in the business either before or after being
3 appointed interim President.

4     Taking the aforementioned evidence in the light most
5 favorable to Goodman, the trier of fact may conclude that he was
6 not a "responsible person" according to Section 6672.  As the
7 starkly contrasting arguments outlined above illuminate, any
8 number of disputed facts on the issue of Goodmans's true
9 authority prevent the government's motion from being granted.[4]

10

11     **B.   Willful Failure to Truthfully Collect, Account for, or**
       **Pay Over Trust Fund Taxes Under 26 U.S.C. § 6672**
12

13     The Ninth Circuit has "construed the term 'willfullness' for
14 purposes of failing to pay over withholding taxes as a
15 'voluntary, conscious and intentional act to prefer other
16 creditors over the United States.'" Phillips v. United States,
17 73 F.3d 939, 942 (9th Cir. 1996) (quoting Klotz v. United States,
18 602 F.2d 920, 923 (9th Cir. 1979); Davis v. United States,
19 961 F.2d 867, 871 (9th Cir. 1992)).  The court distinguishes
20 "reckless disregard" from actual knowledge of whether the trust
21 fund taxes are being paid, saying reckless disregard may
22 sufficiently establish willfulness.  Id. (citing Sorenson v.
23 United States, 521 F.2d 325, 329 (9th Cir. 1975); Teel v. United
24 States, 529 F.2d 903, 905 (9th Cir. 1976).
25 ///

26

27     [4] Despite Goodman's reference in his opposition that summary
28 judgment be granted in his favor sua sponte, that request is not
properly before the Court.

11

Recklessness will be found if a responsible person "fails to investigate or correct mismanagement after being notified of a default in the payment of withholding tax." Phillips, 73 F.3d at 943.

According to the government, the undisputed facts show that Goodman allowed other creditors of ASFI to be paid after he knew of ASFI's delinquent trust fund tax liability. Def.'s Reply Supp. Mot. Summ. J. 6. Goodman disputes that he allowed other creditors of ASFI to be paid, and further disputes that he knew of the delinquent trust fund tax liability while employed at ASFI. Instead, Goodman claims he had no financial duties or responsibility in his role of interim President. Significantly, he states that he did not learn of the delinquent taxes until a revenue agent visited him on August 1, 2003.

The United States goes on to argue that Goodman's "failure to investigate and correct ASFI's failure to pay its taxes [c]onstitute[s] reckless disregard sufficient to establish willfulness in this context." Def.'s Reply Supp. Mot. Summ. J. 7. See Phillips, 73 F.3d 939, 942-43 (9th Cir. 1996). The government omits the remainder of the quote, however, which makes it clear that "failure to investigate and correct... [c]onstitute[s] reckless disregard...after being notified of a default in the payment of withholding tax." Id. (emphasis added). Goodman, for his part, denies being notified of a default in the payment of withholding tax until August 1, 2003, over two and a half years after he left ASFI's employment.

///

///

1   The government attempts to bring that claim into question by
2   citing a report of an IRS interview of Goodman, who admitted that
3   he was "advised of the payroll taxes due" when he was appointed
4   President, and was "[r]esponsible for all financial obligations
5   of [ASFI]" during his time as President.  Def.'s Reply Supp. Mot.
6   Summ. J. 13.  That statement, however, was not signed under oath
7   and the government does not unequivocally attest to any knowledge
8   by Goodman that the taxes were not only due but delinquent.
9   Subsequently, Goodman declared under penalty of perjury that he
10  (1) had no knowledge that ASFI was delinquent in employment taxes
11  until August 1, 2003; and (2) had no involvement in the company's
12  finances.  Answer Countercl. & Countercl. 3 (ECF No. 22-1);
13  Goodman Decl. 19-23, Sept. 20, 2010 (ECF No. 88-4).

14       The Court must credit all inferences supported by the non-
15  moving party's evidence when deciding a motion for summary
16  judgment.  See supra.  Here, 26 U.S.C. § 6672 requires a
17  responsible person willfully fail to collect, account for or pay
18  over trust fund taxes or exercise reckless disregard for the
19  payment of the taxes in order to be found liable.  The government
20  fails to resolve genuine disputes of material fact as to when
21  Goodman learned of ASFI's delinquent tax liability.  The United
22  States argues that Goodman learned of the delinquency during the
23  fourth quarter of 2001.  Goodman testifies he did not learn of
24  the delinquency until August 1, 2003.  Given that stark
25  discrepancy, the issue of willfullness cannot be resolved at the
26  summary judgment stage.

27  ///
28  ///

13

**CONCLUSION**

Based on the foregoing, the Defendant/Counterclaimant United States is not entitled to summary judgment as to its counterclaim.  The United States' Motion for Summary Judgment is accordingly DENIED.

IT IS SO ORDERED.

Dated: December 2, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE