1
2
3
4
5
6
7
8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PUONGPUN SANANIKONE,

11          Plaintiff,                    No. 2:07-cv-1434 KJM KJN

12      v.

13   UNITED STATES OF AMERICA,            FINDINGS AND RECOMMENDATIONS

14          Defendant.

15   _____

16   UNITED STATES OF AMERICA,

17          Counterclaim Plaintiff,

18      v.

19   PUONGPUN SANANIKONE,

20          Counterclaim Defendant,

21      and

22   PAUL TA; JACOB INTVELD; MICHAEL
     GOODMAN; NGUYEN VO,
23
            Additional Defendants on
24          Counterclaim.
     _____/
25

26   ////

1

Presently before the court is defendant/counterclaim plaintiff United States of America's ("United States") renewed motion for default judgment against counterclaim defendant Paul Ta ("Ta").[1]  (Dkt. No. 260.)  Ta has not filed a response to the United States's motion for default judgment.  At the February 28, 2013 hearing on the motion, Colin Sampson appeared telephonically on behalf of the United States and no appearance was made by Ta.  After considering the briefing in support of the motion, counsel's oral argument at the hearing, and appropriate portions of the record, the undersigned recommends that the United States's motion for default judgment be granted.

I.     RELEVANT FACTUAL BACKGROUND

Plaintiff Puongpun Sananikone ("Sananikone") filed a complaint against the United States seeking, generally stated, the refund of taxes that he alleges were illegally assessed and the abatement of a trust fund recovery penalty that he alleges was illegally imposed by the United States pursuant to 26 U.S.C. § 6672.  (Dkt. No. 1, ¶ 3.)  The United States subsequently filed an answer to plaintiff's complaint and filed counterclaims against plaintiff and four other counterclaim defendants: Ta; Jacob Intveld ("Intveld"); Michael Goodman ("Goodman"); and Nguyen Vo ("Vo").  (Dkt. No. 9.)  The United States's counterclaim against Ta seeks "to reduce to judgment certain outstanding tax assessments made against additional counterclaim defendant Paul Ta pursuant to 26 U.S.C. § 6672."[2]  (Id. at 10.)  These assessments, and those made against the other counterclaim defendants, relate to certain taxes withheld from the wages paid to employees of American Steel Frame, Inc. ("ASFI"), which the United States contends the counterclaim defendants were responsible for paying, but failed to pay, to the United States on behalf of ASFI.  (Id. at 4-13.)

---

[1]  This matter is before the undersigned pursuant to E.D. Cal. L.R. 302(c)(19) and 28 U.S.C. § 636(b)(1).

[2]  The United States's counterclaims are separately alleged against each counterclaim defendant.  (See Dkt. No. 9.)

1    As with the other counterclaim defendants, the counterclaim against Ta sets forth

2 a table that includes information related to the type of tax or penalty sought, the associated tax

3 period, the assessment date, and the amount assessed.[3]  (Dkt. No. 9 at 10-11.)  Although not

4 identical, there is significant overlap between tax periods and related assessments that form the

5 basis for the United States's counterclaim against Ta and those that form the basis of the

6 counterclaims against the other counterclaim defendants.  Stated differently, the counterclaims

7 seek to reduce to judgment against multiple counterclaim defendants the same taxes owed by

8 ASFI relating to certain tax periods.  (See id. at 4-13.)

9    All of the counterclaim defendants except for Ta appeared and filed answers to the

10 counterclaims.[4]  (See Dkt. Nos. 13, 21, 22, 63.)  A declaration of service filed with the court

11 demonstrates that the United States, through a process server, personally served Ta with the

12 summons and complaint on December 18, 2007, at 651 Bering Drive, Apartment 1904, in

13 Houston, Texas.  (Dkt. Nos. 25, 25-1.)  Although Ta has not appeared, he was deposed on

14 September 25, 2009, in connection with this action.  (Declaration of Colin C. Sampson in

15 support of the United States's Renewed Motion for Default Judgment, Dkt. No. 260-2

16 ["Sampson Decl."], ¶ 5, Ex. 2.)

17    On February 25, 2008, the Clerk of Court entered a certificate of entry of default

18 against Ta.  (Dkt. No. 29.)  Thereafter, on May 4, 2010, the United States moved for the entry of

19 a default judgment against Ta.  (Dkt. No. 75.)  On August 6, 2010, the court denied the United

20 States's motion for default judgment against Ta without prejudice.  (Dkt. No. 81, 83.)  The court

21 reasoned that, given the overlapping nature of the then-pending counterclaims as to the similarly

22 situated counterclaim defendants, and the relatively early stage of proceedings at that time, the

23

24    [3]  The United States's counterclaim against Ta seeks relief "in the amount of $479,076.62, plus statutory interest accrued from the dates of assessment, and other statutory additions, as provided by law," as well as "fees and costs."  (Dkt. No. 9 at 11.)

25

26    [4]  Counterclaim defendants Intveld and Goodman also filed counterclaims against the United States.  (See Dkt Nos. 21, 22.)

1   court could not find that there was "no just reason for delay" within the meaning of Rule 54(b) of

2   the Federal Rules of Civil Procedure.[5]  (Id.)

3          Since that order, the United States has resolved its claims against counterclaim

4   defendants Vo, Intveld, and Goodman.  (Dkt. Nos. 111, 205, 211, 237.)  Specifically, on

5   November 5, 2010, the court entered a stipulated judgment in favor of the United States and

6   against Vo in the sum of $656,141.63 (less any credits/payments, plus interest).  (Dkt. No. 111.)

7   The judgment amount represented "the balance of federal tax assessments against Nguyen Vo of

8   a trust fund recovery penalty pursuant to 26 U.S.C. Section 6672 for the unpaid withholding

9   taxes of American Steel Frame, Inc. for periods ending June 30, 2000, September 30, 2000,

10  December 31, 2000, June 30, 2001, September 30, 2001, and December 31, 2001...."  (Id.)  On

11  October 18, 2011, the court also granted a joint motion to dismiss filed by the United States and

12  Goodman, which disposed of their respective counterclaims.  (Dkt. No. 205, 211.)  Thereafter, on

13  December 14, 2011, the court entered a stipulated judgment in favor of the United States and

14  against Intveld in the sum of $437,474.14 (less any credits/payments, plus interest) on the United

15  States's counterclaim against Intveld, and dismissed Intveld's counterclaim against the United

16  States with prejudice.  (Dkt. No. 237.)  The judgment amount represented "the balance of the

17  federal tax assessments against Jacob Intveld of a trust fund recovery penalty pursuant to 26

18  U.S.C. § 6672 for the unpaid withholding taxes of American Steel Frame, Inc., for periods

19  ending June 30, 2000, September 30, 2000, December 31, 2000, and June 30, 2001...."  (Id.)

20         Additionally, on October 27, 2011, the United States obtained a jury verdict

21  against plaintiff and counterclaim defendant Sananikone.  (Dkt. No. 226.)  The jury verdict only

22  related to Sananikone's liability under 26 U.S.C. § 6672, because, as counsel for the United

23

24         [5] Rule 54(b) provides, in part, that "[w]hen an action presents more than one claim for
    relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple
25  parties are involved, the court may direct entry of a final judgment as to one or more, but fewer
    than all, claims or parties only if the court expressly determines that there is no just reason for
26  delay."  Fed. R. Civ. P. 54(b).

4

1  States explained at the hearing on the instant motion for default judgment, the parties had agreed

2  that the amount of the judgment would be determined by the parties and the court after any jury

3  verdict in favor of the United States.  Thereafter, on November 28, 2011, Sananikone filed a

4  motion for judgment as a matter of law under Rule 50(b), or alternatively, for a new trial under

5  Rule 59.  (Dkt. No. 232.)  That motion remains pending before the district judge.

6          Subsequently, on January 23, 2013, the United States filed the instant renewed

7  motion for default judgment against Ta.  (Dkt. No. 260.)  Ta was served with the motion via U.S.

8  mail, but did not file any response to the motion.  (Id. at 3.)

9  II.    LEGAL STANDARDS

10          Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a

11  party against whom a judgment for affirmative relief is sought who fails to plead or otherwise

12  defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

13  automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans,

14  238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

15  (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of a default judgment).  Instead,

16  the decision to grant or deny an application for default judgment lies within the district court's

17  sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

18  determination, the court considers the following factors:

19              (1) the possibility of prejudice to the plaintiff, (2) the merits of
                plaintiff's substantive claim, (3) the sufficiency of the complaint,
20              (4) the sum of money at stake in the action[,] (5) the possibility of
                a dispute concerning material facts[,] (6) whether the default was
21              due to excusable neglect, and (7) the strong policy underlying the
                Federal Rules of Civil Procedure favoring decisions on the merits.
22

23  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

24  disfavored.  Id. at 1472.

25          As a general rule, once default is entered, well-pleaded factual allegations in the

26  operative complaint are taken as true, except for those allegations relating to damages.

5

1   TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing

2   Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair

3   Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-

4   pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary

5   facts not contained in the pleadings, and claims which are legally insufficient, are not established

6   by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing

7   Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh,

8   503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-

9   pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004)

10  ("[A] default judgment may not be entered on a legally insufficient claim").  A party's default

11  conclusively establishes that party's liability, but it does not establish the amount of damages.

12  Geddes, 559 F.2d at 560.

13  III.    DISCUSSION

14          A.      Appropriateness of the Entry of Default Judgment Under the Eitel Factors

15                  1.      Factor One: Possibility of Prejudice to Plaintiff

16          The first Eitel factor considers whether the plaintiff would suffer prejudice if

17  default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of

18  granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, the United

19  States, the counterclaim plaintiff with respect to the counterclaim against Ta, would face

20  prejudice if the court did not enter a default judgment.  Absent entry of a default judgment, the

21  United States would be without another recourse for recovering the federal tax liabilities at issue

22  from Ta.  The United States's counterclaim against Ta has already been pending for several

23  years.  Accordingly, the first Eitel factor favors the entry of a default judgment.

24                  2.      Factors Two and Three: The Merits of Plaintiff's Substantive Claims and
                            the Sufficiency of the Complaint

25

26          The undersigned considers the merits and sufficiency of the United States's

6

counterclaim together below because of the relatedness of the two inquiries.  The United States's

counterclaim against Ta seeks to reduce to judgment tax assessments made against Ta pursuant

to 26 U.S.C. § 6672.

The Ninth Circuit Court of Appeals has summarized the function of 26 U.S.C. §

6672 as follows:

> The Internal Revenue Code requires employers...to withhold
> federal social security and individual income taxes from the wages
> of their employees.  Although an employer collects this money
> each salary period, payment to the federal government takes place
> on a quarterly basis.  In the interim, the employer holds the
> collected taxes in trust for the government.  These taxes
> accordingly are known as "trust fund taxes."  Other taxes, such as
> those directly owed by the business, are referred to as "non-trust
> fund taxes."
>
> Once net wages are paid to an employee, the government credits
> that employee with the tax payments, regardless of whether the
> taxes are ultimately paid over by the employer.  In order to protect
> against revenue losses, the tax code offers the IRS a variety of
> means of recovering from employers who fail to pay over collected
> employee taxes.  In addition to tax liens, and criminal penalties, the
> IRS may assess a civil penalty against responsible corporate
> officials equal to the amount of delinquent trust fund taxes ("100%
> penalty"), 26 U.S.C. § 6672.

Davis v. United States, 961 F.2d 867, 869 (9th Cir. 1992) (internal citations omitted).  26 U.S.C.

§ 6672 provides, in pertinent part, that:

> Any person required to collect, truthfully account for, and pay over
> any tax imposed by this title who willfully fails to collect such tax,
> or truthfully account for and pay over such tax, or willfully
> attempts in any manner to evade or defeat any such tax or the
> payment thereof, shall, in addition to other penalties provided by
> law, be liable to a penalty equal to the total amount of the tax
> evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).  "A 'person,' for purposes of section 6672, includes 'an officer or employee

of a corporation, or a member or employee of a partnership, who as such officer, employee, or

member is under a duty to perform the act in respect of which the violation occurs.'  26 U.S.C. §

6671(b).  The recovery of a penalty under section 6672 entails showing that the individual both

was a 'responsible person' and acted willfully in failing to collect or pay over the withheld

1   taxes."  Davis, 961 F.2d at 869-70 (citation omitted).

2          The United States's showings with respect to Ta's responsibility and willfulness

3   are addressed separately below.

4                              *Responsibility*

5          The Ninth Circuit has explained responsibility for purposes of 26 U.S.C. § 6672

6   as follows:

7          Under § 6672, persons responsible have the final word as to what
           bills should or should not be paid and when.  The final word does
8          not mean final but instead the authority required to exercise
           *significant* control over the corporation's financial affairs,
9          regardless of whether the individual exercised such control in fact.

10         Responsibility is a matter of status, duty, and authority, not
           knowledge.  Authority turns on the scope and nature of an
11         individual's power to determine how the corporation conducts its
           financial affairs; the duty to ensure that withheld employment taxes
12         are paid over flows from the authority that enables one to do so.

13         Although an individual's daily functions may be unrelated to
           financial or tax-related decision-making, that individual may be
14         "responsible" by having the authority to pay or to order the
           payment of delinquent taxes.  An individual who does not have the
15         authority and control to pay the payroll taxes may not be
           "responsible."  Courts must look beyond official titles to the actual
16         decision-making process.

17         The Second Circuit outlined factors relevant to whether an
           individual is "responsible" under § 6672...stating that the
18         individual's duties as outlined in the corporate bylaws, his ability
           to sign checks, his status as an officer or director, and whether he
19         could hire and fire employees were important factors to consider.
           In *Hochstein*, the Second Circuit found the defendant "responsible"
20         because as controller of the company, he had check signing
           authority and the discretion over which creditors to pay.  The most
21         critical factor was having significant control over the enterprise's
           finances.
22

23   United States v. Jones, 33 F.3d 1137, 1139-40 (9th Cir. 1994) (citations and quotation marks

24   omitted); see also Purcell v. United States, 1 F.3d 932, 936-37 (9th Cir. 1993).  Although section

25   6672 is phrased in the conjunctive, it is not necessary that the person be responsible for all the

26   duties set forth in the statute; i.e., the phrase "[a]ny person required to collect, truthfully account

                                          8

1    for, and pay over any tax imposed by this title" is not limited to "those persons in a position to

2    perform all three of the enumerated duties with respect to the tax dollars in question." Slodov v.

3    United States, 436 U.S. 238, 250 (1978).

4            Furthermore, "delegation will not relieve one of responsibility; liability attaches to

5    all those under the duty set forth in the statute." Purcell, 1 F.3d at 937.  Indeed, there can be

6    more than one "responsible" person within a corporation.  Hartman v. United States, 538 F.2d

7    1336, 1340 (8th Cir. 1976).

8            In this case, the United States's counterclaim alleged that Ta was responsible for

9    collecting, truthfully accounting for, and paying over to the United States the income and FICA

10   taxes withheld from wages paid to ASFI employees; that a delegate of the Secretary of Treasury

11   made assessments pursuant to 26 U.S.C. § 6672 against Ta as a responsible person of ASFI

12   (setting forth the specific tax periods, assessment dates, and amounts assessed); and that, despite

13   timely notice and demand for payment of the assessments, Ta neglected, failed, or refused to pay

14   the assessments.  (Dkt. No. 9 at 10-11, ¶¶ 6-8.)  These allegations, taken as true for purposes of

15   this motion for default judgment, are also bolstered by further evidence submitted by the United

16   States, demonstrating that Ta is a "responsible" person within the meaning of 26 U.S.C. § 6672.

17           Ta completed and signed a Report of Interview on August 7, 2003, in which he

18   stated that he was employed by ASFI from October 1999 until August 2001, and that during that

19   time frame, Ta hired/fired employees, managed employees, directed/authorized the payment of

20   bills, and made/authorized bank deposits.  (Sampson Decl. ¶¶ 4-5, Ex. 1 [August 7, 2003 report

21   of interview], Ex. 2 [transcript of Ta's September 25, 2009 deposition], at 172:16-174:4.)  Ta

22   also signed ASFI's corporate tax returns for the second and fourth quarters of 2000.  (Id., Ex. 3.)

23   Minutes of ASFI's September 1, 1999 organizational meeting indicate that Ta was a member of

24   ASFI's board of directors, ASFI's secretary, and ASFI's Executive Vice President.  (Id. Ex. 5.)

25   Minutes of the April 20, 2001 meeting of ASFI's board of directors further indicate that Ta acted

26   as ASFI's Chief Financial Officer since its founding, until Ta was replaced by Vo at that April

1   2001 meeting.  (Id., Ex. 4.)  Ta was one of ASFI's founding investors, and when ASFI filed for

2   bankruptcy on February 5, 2002, Ta owned nearly 9.5% of the company's stock. (Id. Ex. 5; Ex. 6

3   [ASFI's February 5, 2002 bankruptcy petition] at 38.)

4          Therefore, in light of the allegations in the United States's counterclaim against

5   Ta and the additional evidence submitted in connection with the motion for default judgment, the

6   United States has made a sufficient showing that Ta was a "responsible" person for purposes of

7   26 U.S.C. § 6672 through the third quarter of 2001.

8                               *Willfulness*

9          For purposes of 26 U.S.C. § 6672, willfulness has been defined as a "voluntary,

10  conscious and intentional act to prefer other creditors over the United States.  An intent to

11  defraud the government or other bad motive need not be proven.  In fact, conduct motivated by a

12  reasonable cause may nonetheless be willful." Davis, 961 F.2d at 871.  Stated differently, "[i]f a

13  responsible person knows that withholding taxes are delinquent, and uses corporate funds to pay

14  other expenses, even to meet the payroll out of personal funds he lends the corporation, [Ninth

15  Circuit precedent] require[s] that the failure to pay withholding taxes be deemed willful."

16  Phillips v. United States, 73 F.3d 939, 942 (9th Cir. 1996); see also Sorenson v. United States,

17  521 F.2d 325, 328 (9th Cir. 1975) (holding that payment of wages with knowledge of an unpaid

18  trust fund tax liability constitutes a willful failure to pay over the taxes under section 6672).

19  Additionally, "reckless disregard of whether the taxes are being paid over, as distinguished from

20  actual knowledge of whether they are being paid over, may suffice to establish willfulness."

21  Phillips, 73 F.3d at 942.

22         A responsible person's liability is not limited to future quarters after he or she

23  learns of the delinquency; rather, once the responsible person learns of the delinquency, he or she

24  is obligated to apply unencumbered corporate funds to pay the tax liabilities for past delinquent

25  quarters as well as any future quarters for which he or she is a responsible person.  Muck v.

26  United States, 3 F.3d 1378, 1381-82 (10th Cir. 1993).

1    In this case, additional counterclaim defendant Intveld testified at his August 18,

2    2009 deposition that he informed the board of directors at a January 2001 meeting that ASFI's

3    taxes were delinquent.  (Sampson Decl. Ex. 7.)  During his own deposition, Ta admitted that he

4    knew about ASFI's delinquent taxes by at least April 4, 2001.  (Id. Ex. 2, at 153:5-17.)

5    Thereafter, ASFI remained in business for several months, and made payments to creditors other

6    than the United States (including payments to Ta himself for his salary and certain living

7    expenses), at least some of which were expressly authorized by Ta.  (Id. Ex. 2 [Ta Deposition

8    Transcript], at 31:21-33:13, 202:23-203:7; Ex. 6 [ASFI's February 5, 2002 bankruptcy petition]

9    at 14-33; Ex. 8 [Report regarding June 26, 2003 interview of ASFI bookkeeper Charlene

10   Amarante]; Ex. 9 [Transcript of August 25, 2009 deposition of Charlene Amarante] at 94:17-

11   96:2, 117:3-119:6, 148:3-151:21, 190:6-18; Ex. 10 [October 19, 2011 trial transcript of the

12   examination of Charlene Amarante] at 179:20-25, 183:12-16.)

13   As such, the United States has also made a sufficient showing of willfulness, i.e.,

14   that Ta voluntarily, consciously, and intentionally preferred other creditors, including himself,

15   over the United States.

16   As discussed further below, the United States has submitted certificates of

17   assessment supporting the amounts assessed against Ta pursuant to 26 U.S.C. § 6672 for the

18   various tax periods at issue.

19   Accordingly, the undersigned finds that the United States's counterclaim against

20   Ta is sufficiently pled and supported by the evidence submitted in connection with this motion,

21   and therefore has merit.  The second and third Eitel factors therefore support the entry of a

22   default judgment against Ta.

23            3.     Factor Four: The Sum of Money at Stake in the Action

24   Under the fourth factor cited in Eitel, "the court must consider the amount of

25   money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F.

26   Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494,

500 (C.D. Cal. 2003).  Here, the amount of money sought from Ta is certainly substantial – the United States seeks a total amount of $642,815.80, as of February 15, 2013, plus interest and other penalties accruing thereafter.  However, 26 U.S.C. § 6672 clearly allows for, and envisions, the collection of such an assessment from responsible persons who willfully fail to pay over trust fund taxes.  Also, as will be discussed below, Ta had fair notice of this litigation and an opportunity to defend his interests, which he chose not to do.  Under these circumstances, the undersigned concludes that this factor, at the very least, does not militate against the entry of a default judgment.

4.      Factor Five: The Possibility of a Dispute Concerning Material Facts

The United States has provided the court with well-pleaded allegations, as well as documentation and other evidence, supporting its counterclaim against Ta.  Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default [], there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  As such, the undersigned concludes that the fifth factor favors a default judgment.

5.      Factor Six: Whether the Default Was Due to Excusable Neglect

The undersigned finds that the entry of a default judgment is not precluded by excusable neglect.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Ta has had ample notice of this lawsuit.  As discussed above, Ta was personally served with process on December 18, 2007. (Dkt. Nos. 25, 25-1.)  Additionally, on September 25, 2009, Ta was actually deposed in connection with this action.  (Sampson Decl. ¶ 5, Ex. 2.)  Thus, the record suggests that Ta has chosen not to defend himself in this action, and that the default did not result from excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

1      6.      Factor Seven: The Strong Policy Underlying the Federal Rules of Civil
               Procedure Favoring Decisions on the Merits

2

3          "Cases should be decided upon their merits whenever reasonably possible."  Eitel,

4   782 F.2d at 1472.  However, district courts have concluded with regularity that this policy,

5   standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in

6   an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc.,

7   694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, although the undersigned is

8   cognizant of the policy in favor of decisions on the merits—and consistent with existing policy

9   would prefer that the counterclaim against Ta be resolved on the merits—that policy does not, by

10  itself, preclude the entry of default judgment.  Because Ta has yet to appear despite the fact that

11  the action has been pending for several years, Ta's own actions have prevented resolution of the

12  matter on the merits.

13          After careful consideration of all the Eitel factors, the undersigned concludes that

14  the United States is entitled to the entry of a default judgment against Ta.  The court's earlier

15  concerns with respect to Rule 54(b) no longer apply, because the United States has obtained a

16  jury verdict against plaintiff and counterclaim defendant Sananikone, and any claims involving

17  counterclaim defendants Vo, Intveld, and Goodman have been resolved.  Moreover, even

18  assuming arguendo that the district judge were to grant Sananikone a new trial, resulting in an

19  ultimate finding in favor of Sananikone, there is no significant risk of incongruous judgments.  It

20  is undisputed that ASFI's taxes were delinquent for the tax periods at issue, and a potential

21  determination that Sananikone was not a "responsible" person and/or did not act willfully for

22  purposes of 26 U.S.C. § 6672, based on facts concerning Sananikone's individual involvement

23  with ASFI, is not necessarily inconsistent with a default judgment against Ta.  Also, as discussed

24  below, 26 U.S.C. § 6672 allows for joint and several liability among responsible persons.  As

25  such, regardless of any unresolved issues that remain as to Sananikone, there is no just reason for

26  delay in entering a default judgment against Ta.

1    Therefore, the undersigned recommends that a default judgment against Ta be

2    entered.  All that remains is determining the amount and terms of the judgment.

3         B.    Amount and Terms of the Judgment

4         The United States requests a default judgment for the tax assessments made

5    against Ta pursuant to 26 U.S.C. § 6672 relating to the unpaid federal income and employment

6    taxes of ASFI for the second, third, and fourth quarters of 2000, and the second and third quarters

7    of 2001, for a total amount of $642,815.80 (as of February 15, 2013), plus all penalties and

8    interest accruing after February 15, 2013, pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28

9    U.S.C. § 1961(c), until paid.

10        The United States bears the initial burden of proof in an action to collect taxes.

11   Palmer v. United States, 116 F.3d 1309, 1312 (9th Cir. 1997).  However, there is a presumption

12   of correctness applied to tax assessments, so long as such assessments are supported by a

13   minimum factual foundation.  Id.  The presumption shifts the burden of proof to the taxpayer to

14   show that the determination is incorrect.  Id.

15        In this case, the United States submitted copies of the Certificates of Assessments,

16   Payments, and Other Specified Matters (Form 4340) for Ta for the tax periods ending June 30,

17   2000; September 30, 2000; December 31, 2000; June 30, 2001; and September 30, 2001,

18   accompanied by Certificates of Official Record.  (Declaration of Alan Pobre in support of the

19   United States's Renewed Motion for Default Judgment, Dkt. No. 260-13 ["Pobre Decl."] ¶ 4,

20   Exs. A-E.)  These forms are "probative evidence in and of themselves and, in the absence of

21   contrary evidence, are sufficient to establish that ... assessments were properly made."  Koff v.

22   United States, 3 F.3d 1297, 1298 (9th Cir. 1993) (quoting Hughes v. United States, 953 F.2d 531,

23   540 (9th Cir. 1992)).

24        Because the Certificates of Assessments do not contain a current statement of

25   interest due on the taxes, the United States also provided copies of IRS "INTST" forms, which

26   reflect Ta's tax liability for the above-mentioned quarters, inclusive of interest, penalties, and

14

1   statutory additions, as of February 15, 2013.  (Pobre Decl. ¶¶ 5-7, Exs. F-J.)  More specifically,

2   these forms show that, as of February 15, 2013, Ta's liability for the tax period ending June 30,

3   2000, is $54,046.57; for the tax period ending September 30, 2000, is $119,196.51; for the tax

4   period ending December 31, 2000, is $194,424.33; for the tax period ending June 30, 2001, is

5   $152,462.17; and for the tax period ending September 30, 2001, is $122,686.22, for a total of

6   $642,815.80.  (Id.)

7          There is no evidence suggesting that the assessments are incorrect or were

8   improperly made.  As such, they constitute sufficient evidence to support the amount of the

9   judgment sought against Ta.

10          Nevertheless, the fact that a judgment for the amount specified above may be

11   entered against Ta does not necessarily mean that the United States can collect the entire amount

12   of the judgment against Ta, in light of the United States's collection efforts against the other

13   counterclaim defendants.  While two or more persons may be jointly and severally liable under

14   26 U.S.C. § 6672, courts have held that the government is not entitled to more than one

15   satisfaction of the tax liability owed.  See Hartman, 538 F.2d at 1340; Carlucci v. United States,

16   793 F. Supp. 482, 484 (S.D.N.Y. 1992).  This limitation is because, "[w]hile [section] 6672's

17   imposition is called a penalty, it is well established that it is not a penalty in any criminal sense of

18   the term.  It is civil in nature and is merely a means whereby the government can collect from a

19   corporate officer or employee the taxes that the corporate employer withheld and should have

20   accounted for and paid over."  Hartman, 538 F.2d at 1340.

21          In this case, as noted above, the court has already entered stipulated judgments

22   against counterclaim defendants Vo and Intveld, which involve tax periods overlapping to some

23   degree with the tax periods for which Ta is to be held liable.  (Dkt. Nos. 111, 237.)  At the

24   hearing, counsel for the United States indicated that some amounts may already have been

25   collected from these counterclaim defendants pursuant to those judgments.  Therefore, any

26   default judgment entered against Ta would necessarily be subject to an abatement of any

15

1  payments collected from other liable parties and applied by the United States to a particular tax

2  period for which Ta is held liable, prior to payment by Ta.  While the United States may apply, as

3  it sees fit, payments to any tax period with outstanding ASFI trust fund taxes for which the

4  paying party is a liable responsible person, the United States is only entitled to one satisfaction of

5  ASFI's tax liabilities, as enforced through 26 U.S.C. § 6672.

6  IV.    CONCLUSION

7            For the reasons stated above, IT IS HEREBY RECOMMENDED that:

8            1.  The United States's renewed motion for default judgment against counterclaim

9  defendant Paul Ta (dkt. no. 260) be GRANTED.

10           2.  Judgment be entered in favor of the United States and against Paul Ta in the

11  sum of $642,815.80, less any credits or payments, plus all interest and penalties accruing after

12  February 15, 2013, pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c),

13  until paid, representing the balance of the federal tax assessments against Paul Ta of a trust fund

14  recovery penalty pursuant to 26 U.S.C. § 6672 for the unpaid withholding taxes of American

15  Steel Frame, Inc., for tax periods ending June 30, 2000; September 30, 2000; December 31,

16  2000; June 30, 2001; and September 30, 2001.  Because the United States is only entitled to one

17  satisfaction of ASFI's tax liabilities, the phrase "less any credits or payments" shall mean that the

18  judgment amount is subject to an abatement of any payments collected from other liable parties

19  and applied by the United States to a particular tax period for which Ta is liable, prior to payment

20  by Ta.

21           IT IS SO RECOMMENDED.

22           These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

24  (14) days after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

1   shall be served on all parties and filed with the court within fourteen (14) days after service of the

2   objections.  The parties are advised that failure to file objections within the specified time may

3   waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

4   Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

5   DATE:  March 1, 2013

6

7

    KENDALL J. NEWMAN
8   UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

17